UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

PATRICK W. HEAPS, et al.,

       Plaintiffs,                          Case No. 2:10 CV 729
                                                JUDGE GREGORY L. FROST
      v.                                     Magistrate Judge Norah McCann King

SAFELITE SOLUTIONS, LLC, et al.,

       Defendants.

**OPINION AND ORDER**

This matter is before the Court for consideration of Plaintiffs' Motion for Conditional Class Certification, Expedited Discovery, and Court-Supervised Notice to Potential Opt-In Plaintiffs ("Plaintiffs' Motion") (ECF No. 7), Defendants' Memorandum in Opposition (ECF No. 14), and Plaintiffs' Reply Memorandum (ECF No. 17). For the reasons that follow, the Court **GRANTS in part and DENIES in part** Plaintiffs' Motion.

**I. Background**

Safelite is the leading provider of insurance claims processing for automobile windshield and window repair and replacement in the United States. Safelite operates national call centers at two locations in Ohio and one in Arizona. Patrick Heaps, Joshua Pursley, and Richard Rupert ("Plaintiffs") are current and former employees of Safelite who worked at the Farmers Drive facility in Columbus, Ohio. (*Id.*) Safelite's other Ohio facility is located at Shrock Road Columbus, Ohio and the third call center facility is located in Chandler, Arizona. (O'Mara Decl. ¶ 3.)[1] Plaintiffs allege that Safelite uniformly treated individuals employed as Customer Service

---

[1] Brian O'Mara is employed by Safelite as Vice President of National Contact Center Operations. He is responsible for the management of Safelite's call center operations nationwide.

1

Representatives ("CSRs") to a common business practice of requiring them to perform certain duties integral to their job while they were not clocked in and being paid for the duties.

On August 13, 2010, Plaintiffs filed this action on behalf of themselves and all other similarly situated individuals, against Safelite Solutions, LLC and Safelite Group, Inc. (referred to collectively as "Safelife"), for unpaid wages and overtime pay.  Plaintiffs allege that Safelite willfully failed to compensate employees with overtime pay in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, and the Ohio Minimum Fair Wage Standards Act, Ohio Revised Code §§ 4111.01 *et seq.*  In the complaint, Plaintiffs defined the collective class they seek to represent:

> All current or former Customer Service Representatives employed during the past three years by Defendants who, when the time at the start of each scheduled shift they spent booting up is included, worked more than 40 hours a week and were compensated for such overtime work at an amount equaling less than one and one-halftimes the Customer Service Representative's regular rate of pay based on a 40-hour workweek.

(ECF No. 2, at 1.)  In their briefing, Plaintiffs have revised this definition to include the time CSRs spent shutting down their computers and the lunch and break time periods that CSRs were allegedly required to participate in online training necessary for the successful performance of their job duties.  (ECF No. 17, at 1, 10.)

## II.  Discussion

### A.  Conditional Certification of the Class

#### 1.  Standard

Section 216(b) provides that employees, under certain circumstances, may collectively sue an employer to recover unpaid overtime compensation.  *See Harrison v. McDonald's Corp.*,

2

411 F. Supp.2d 862, 864-65, (S.D. Ohio 2005); *Smith v. Lowe's Home Ctrs.*, 236 F.R.D. 354, 357 (S.D. Ohio 2006).  Specifically, Section 216(b) states:

> Any employer who violates [the minimum wage or maximum hours provisions of this title] shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages . . . .  An action to recover [such] liability may be maintained . . . in any . . . court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated.

29 U.S.C. § 216(b).

Determining whether a collective action is the appropriate means for prosecuting an action is left to the trial court's discretion.  *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 546 (6th Cir. 2006) (citing *Hoffmann-La Roche, Inc., v. Sperling*, 493 U.S. 165, 167-68 (1989)).

> Section 216(b) establishes two requirements for a representative action: 1) the plaintiffs must actually be "similarly situated," and 2) all plaintiffs must signal in writing their affirmative consent to participate in the action. 29 U.S.C. § 216(b); *Sperling*, 493 U.S. at 167-68.  Similarly situated persons are permitted to "opt into" the suit.  This type of suit is called a "collective action."  It is distinguished from the opt-out approach utilized in class actions under Fed. R. Civ. P. 23.

*Id.*  "The preliminary certification is intended to provide notice and opportunity to opt in." *Lowe's Home Ctrs.*, 236 F.R.D. at 357.

The Sixth Circuit has not yet adopted a definitive standard as a means of evaluating conditional class certification.  But "[c]ourts are in general agreement that the certification of a collective action under the FLSA should proceed in two stages." *Lowe's Home Ctrs.*, 236 F.R.D. at 357.  At the first or "notice" stage, which is the relevant inquiry here, the plaintiffs' burden is "fairly lenient," and requires "a modest factual showing" that he is similarly

situated to the other employees sought to be notified. *Harrison*, 411 F. Supp. 2d at 864, 865 (citing *Olivo v. GMAC Mortgage Corp.*, 374 F. Supp. 2d 545, 548 (E.D. Mich. 2004)).  At the second stage, the defendant may file a motion for decertification in which it challenges the earlier conditional determination that employees are sufficiently similarly situated. *Id.* at 865.

"[C]onditional certification should not be granted unless the plaintiff presents some evidence to support her allegations that others are similarly situated." *Id.* at 868.  Thus, "plaintiffs must submit evidence establishing at least a colorable basis for their claim that a class of 'similarly situated' plaintiffs exists." *Id.* (quoting *Severtson v. Phillips Beverage Co.*, 137 F.R.D. 264, 267 (D. Minn. 1991)).  This evidence includes "factors such as whether potential plaintiffs were identified; whether affidavits of potential plaintiffs were submitted; whether evidence of a widespread discriminatory plan was submitted, and whether as a matter of sound class management, a manageable class exists." *Olivo*, 374 F. Supp. 2d at 548 (quoting *H&R Block, Ltd. v. Housden*, 186 F.R.D. 399, 400 (E.D. Tex. 1999) (internal quotation marks omitted).

**2. Analysis**

Plaintiffs attempt to make the required modest factual showing demonstrating that they are "similarly situated" to potential class members through the declarations of two of the named Plaintiffs and declarations from three other Safelite employees.  The declarations indicate that Safelite failed to pay CSRs for the time spent booting up their computer systems before beginning their shift and time spent shutting down their systems after their shift ended. (*See* McIntosh Decl. ¶¶ 4, 9; Pursley Decl. ¶¶ 3, 5, 6; Kritzer Decl. ¶¶ 3, 4, 5, 6, 7; Sharon Ruppert Decl. ¶¶ 3, 4; Richard Ruppert Decl. ¶¶ 4, 5.)  The declarations demonstrate that the

CSRs were trained to begin and end their shifts in such a manner.  (*See* McIntosh Decl. ¶ 4; Pursley Decl. ¶ 3; Sharon Ruppert Decl. ¶¶ 2, 3; Richard Ruppert Decl. ¶ 4.)  The declarations provide that multiple trainers instructed future CSRs in such a manner and that the trainees were to be employed at both Safelite facilities in Columbus, Ohio.  (*See* McIntosh Decl. ¶¶ 4, 6; Pursley Decl. ¶¶ 2, 3; Sharon Ruppert Decl. ¶¶ 2, 3.)  The declarations evince that the described manner of working off the clock began after a change in company policy on January 1, 2007 (*see* Kritzer Decl. ¶¶ 8, 9, and 11), and continued until Safelite changed its policy in August 2010 subsequent to this litigation (*see* McIntosh Decl. ¶¶ 7, 11; Pursley Decl. ¶¶ 5, 6; Kritzer Decl. ¶ 11).

Plaintiffs' declarations also illustrate that Safelite's CSRs were subject to standard company wide policies and practices that required CSRs to boot up and shut down their computers while not clocked in.  (*See* McIntosh Decl. ¶¶ 4, 9; Pursley Decl. ¶¶ 3, 5, 6; Kritzer Decl.¶¶ 3, 4, 5, 6, 7; Sharon Ruppert Decl. ¶¶ 3, 4; Richard Ruppert Decl. ¶¶ 4, 5.)  CSRs "log in" by entering a unique identification number in the telephone at their workstation and this "log in" operates as a time clock for payroll purposes.  (O'Mara Decl. ¶ 13.)  Safelite's handbooks, *e.g.*, Safelite's "Associate Handbook" and Safelite's "Supplemental Handbook [for] National Contact Centers," set forth policies for all employees and do not indicate that they are specific to any geographic location.  (Kritzer Decl., Ex. A.)

Safelite argues that Plaintiffs are unable to demonstrate that they are similarly situated to the proposed class because Plaintiffs have no evidence of a common policy and because Plaintiffs' allegations would require individualized inquiries of each class member's eligibility for overtime.  Safelite's arguments are not well-taken.

### a. Common policy

This Court agrees with Safelite that courts consistently require plaintiffs to show that they and potential plaintiffs together were victims of a common policy or plan that violated the law before certifying a collective action. *See, e.g.*, *Olivo*, 374 F. Supp. 2d at 548. As support for it's contention that there is no common policy here, Safelite attempts to distinguish *Shabazz v. Asurion Ins. Serv.*, No. 3:07-0653, 2008 U.S. Dist. LEXIS 29696 (M.D. Tenn. Apr. 10, 2008), the case upon which Plaintiffs rely to support their contention that there is a common policy in this action to which both Plaintiffs and the potential plaintiffs were subjected. (ECF No. 14 at 6-7.) In that case, the plaintiffs claimed they were not paid for off the clock work (booting up their computers) before beginning their paid shift by punching into their phones (which, like at Safelite, served as the time clock):

> Specifically, Plaintiffs allege that they were instructed or required by their managers or supervisors to report to work fifteen to twenty minutes prior to their scheduled start times. During that period, employees were required to turn on and boot their computers, start various computer programs, and log on to various computer systems. Plaintiffs claim that these tasks were integral and indispensable to their principal work activities, but they were not paid for the tasks and instead only clocked in after they punched in an identification number on their phones.

*Id.* at \*\*3-4. Based on these allegations, the court granted conditional certification. After recognizing this section of this case, Safelite argues:

> However, the facts of Plaintiffs Heaps, Ruppert, and Pursley's employment (or that of their co-workers) at Safelite are plainly distinguishable from those of the Shabazz plaintiffs. Safelite does not require CSRs to boot up their computer before logging in to the phone system. O'Mara Decl. ¶ 17. All hours of work are tracked by the phone system. O'Mara Decl. ¶ 16. Safelite's policy and practice is to capture all of the CSRs' duties and tasks (including booting up the computers), and to compensate them for those duties and tasks after they have logged into their phones. O'Mara Decl. ¶¶ 21 and 23.

(ECF No. 14 at 7.) Safelite's argument misses the mark.

Safelite does not contend that it has no common policy applicable to all of its CSRs; indeed, Safelite admits that it has such a policy ("Safelite's policy and practice is to capture all of the CSRs' duties and tasks . . . and to compensate them for those duties and tasks"). Instead, Safelite argues that, unlike the *Shabazz* policy that required employees to work off the clock, the Safelite policy requires its CSRs to work only while on the clock. In other words, Safelite's policy is not unlawful.

Safelite's argument, however, relates to the merits of this action and is not the relevant inquiry at this stage of these proceedings. Even if this argument were relevant, the evidence presented to this Court by Plaintiffs unequivocally shows that before the commencement of this litigation the CSRs were subjected to a policy that was similar to the *Shabazz* policy and that the policy was changed after this litigation was filed, raising at a minimum a genuine issue of material fact as to what the relevant policy entailed. (*See* McIntosh Decl. ¶ 7; Sharon Ruppert Decl. ¶ 4; Kritzer Decl., ¶¶ 2, 4.) Thus, Safelite's argument does nothing to dispute that it applies a common "clocking in and clocking out" policy to all CSRs at all of its call centers.

### b. Individualized inquiry

Safelite argues that conditional class certification is inappropriate because Plaintiffs' allegations would require individualized inquiries of each class member's eligibility for overtime. Safelite contends:

> In light of Safelite's policy that CSRs log into their telephones before booting up their computers, the reason or reasons why Plaintiffs Heaps, Ruppert, and Pursley felt inclined to reverse this process on any particular occasion would require an individualized inquiry as to their rationale and motivation for doing so. This is inappropriate for a collective action.

(ECF No. 14 at 8.)

The policy to which Safelite refers, however, is alleged by Plaintiffs to be a policy that was put into effect after the commencement of this litigation.  The evidence submitted by Plaintiffs indicates that the policy in place before this action was filed required all CSRs to work off the clock at specific times, *i.e.*, before clocking in and after clocking out.  Therefore, although the Court agrees that individualized inquiries weigh in favor of denying conditional class certification, the inquiry here is not too individualized.

For example, Safelite relies upon *Diaz v. Electronics Boutique of America, Inc.*, No. 04-CV-0840E(SR), 2005 WL 2654270 (W.D. N.Y. Oct. 17, 2005), for the proposition that overtime claims for time spent "off the clock" were too individualized for collective action treatment.  The plaintiffs in *Diaz*, however, were attempting to represent a class of employees that worked at more than 1,460 stores nationwide.  One of the named plaintiffs alleged that his timesheets were altered so that the defendants would not be required to pay overtime.  The plaintiffs, however, did "not contend that such was at the direction of [the defendants'] management or in conjunction with a clear [company] policy."  *Id.* at *4.  Further, one of the named plaintiff's claimed that the defendant "avoided paying him overtime wages by willfully misclassifying him as exempt although his duties consisted primarily of nonexempt tasks."  *Id.* at *3 (the named plaintiff's "claim and the claims of other [individuals in his job classification] thus will involve an analysis of daily duties and responsibilities and the amount of time spent on each").  Thus, not only did the named plaintiffs' claims each differ significantly, neither was pursuant to a company wide policy.  This is not the case in the instant action, where the named plaintiffs claims do not differ from each other nor from the potential class and Plaintiffs' claims were realized allegedly as a result of a company policy.

8

### c. Conclusion of conditional certification analysis

The Court is satisfied that Plaintiffs have presented sufficient evidence to meet their fairly lenient burden of showing that the named Plaintiffs are similarly situated to the proposed CSR class. Plaintiffs have identified the potential plaintiff class and submitted declarations from potential plaintiffs and from the named plaintiffs. Plaintiffs have presented evidence that all CSRs were subject to a company wide policy that prevented them from being compensated for time worked. That policy allegedly required all CSRs to work before clocking in and after clocking out. The Court concludes that a manageable class exists here; one that would serve the purposes of a collective action under Section 216(b) of the FLSA, such as having one proceeding for common issues of law, which will redound to the advantage of employer and employee alike through avoidance of multiplicity of suits. *See Sperling*, 493 U.S. at 174. Therefore, the Court **GRANTS** Plaintiffs' Motion as it relates to conditional class certification.

### B. Discovery

The FLSA permits an action to be "commenced within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." 29 U.S.C. § 255(a). A willful violation exists when an employer knew or recklessly disregarded that its conduct violated the FLSA. *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988). Plaintiffs request that the Court expedite discovery and send notice to individuals employed as CSRs in the past three years. Safelite argues that if discovery is permitted, the relevant period should be two years and not three years because "there is no evidence that Safelite willfully violated the FLSA." (ECF No.

14, at 9.) Plaintiffs, however, contend that Safelite's willfulness should not be determined until later in the proceedings. Plaintiffs' argument is well taken.

For purposes of certifying a representative action, courts have determined that the relevant discovery period should be three years and that discovery will confirm whether or not willfulness existed. *See Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 369 (S.D. N.Y. 2007); *Roebuck v. Hudson Valley Farms, Inc.*, 239 F. Supp.2d 234, 240 (N.D. N.Y. 2002). This Court finds these decisions persuasive. The Court, therefore, will allow Plaintiffs to obtain discovery for a three year period.

With regard to the scope of the permitted expedited discovery, Plaintiffs request that Safelite provide, within ten days, the potential class members' "names, best known addresses, email addresses, and cellular and home telephone numbers." (ECF No. 7, at 9.) Safelite argues that Plaintiffs' request is overbroad and should be limited to the class members' names and addresses. (ECF No. 14, at 13) (citing to cases that have ordered names and addresses to be provided but not indicating whether any other type of information was requested). Safelite's argument is not well taken.

This court has permitted the disclosure of putative class members' names, last known addresses and listed phone numbers. *Sniffen v. Spectrum Indus. Serv.*, No. 2:06-CV622, 2007 WL 1341772, at *2 (S.D. Ohio Feb. 13, 2007). The Court does not find the addition of email addresses to be too broad to the extent that Safelite is in possession of them. Thus, if Safelite can provide email addresses without being required to collect them from the potential class members it is to do so. *See accord Tolentino v. C & J Spec-Rent Services Inc.*, 716 F. Supp.2d 642, 655 (S.D. Tex. 2010) ("[T]he Court also orders that Defendant produce to Plaintiffs in a

usable electronic format no later than 14 days from entry of this Order, the names, addresses, phone numbers, and e-mail addresses of all persons employed by Defendant in 'operator' positions in the coil tubing division at Defendant's Robstown and Marshall, Texas facilities between three years prior to May 26, 2010 and October 31, 2008."); *Delaney*, 261 F.R.D. at 60 ("Defendants shall produce a computer-readable list of all non-managerial, tipped employees employed by Japonais within the last three years with name, last known mailing address, alternate address (if any), all known telephone numbers, and dates of employment."). With regard to the telephone numbers, Safelite is to provide home telephone numbers unless the only number it has is the employees cellular telephone number, then it shall provide that number.

The Court **GRANTS** Plaintiffs' Motion as it relates to expedited discovery. Safelite is **ORDERED** to provide to Plaintiffs' counsel the putative class members' names, last known addresses, telephone numbers, and if known, email addresses within ten (10) days of date of this Opinion and Order.

**C.  Court Supervised Notice**

Courts may facilitate FLSA collective actions by authorizing notice of the suit to potential plaintiffs. *Hoffmann-La Roche Inc.,* 493 U.S. at 169. The FLSA "grant[s] the court the requisite procedural authority to manage the process of joining multiple parties in a manner that is orderly, sensible, and not otherwise contrary to statutory commands or the provisions of the Federal Rules of Civil Procedure." *Hoffmann-LaRoche*, 493 U.S. at 170.  Thus, the Court will supervise notice so to provide potential plaintiffs "accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." *Id.*

11

Here, Plaintiffs request that their notice, (ECF No. 7, Ex. A), be approved by the Court and sent to potential opt-in plaintiffs. Safelite argues that several deficiencies exist in Plaintiffs' notice and urges the Court not to simply "rubber stamp" it. The parties differ with respect to the following issues: (1) whether the notice should include any references to the Ohio Minimum Wage Act; (2) the wording the notice should utilize regarding the possible discovery that opt-in plaintiffs may be required to complete; (3) whether the notice should advise potential opt-in plaintiffs that they may be liable for the payment of Safelite's costs associated with the lawsuit if Safelite prevails; (4) the wording used to inform the potential opt-in plaintiffs that they have a right to representation in this litigation by counsel of their own choosing; (5) the lack of information in the notice regarding Safelite's position; and (6) the proposed opt-in period.

After review of Plaintiffs' proposed notice, the Court **GRANTS** Plaintiffs' Motion as it relates to Plaintiffs' request for the Court to supervise notice and **DENIES** Plaintiffs' Motion as it pertains to the use of Plaintiffs' proposed notice. Plaintiffs shall make the changes to the proposed notice the Court sets out below before the proposed notice is resubmitted to this Court for review.

**1. The Ohio Minimum Wage Act**

Plaintiffs' notice refers multiple times to the Ohio Minimum Fair Wage Standards Act. Plaintiffs' Motion, however, only seeks certification of a collective action under the FLSA. Furthermore, Plaintiffs' complaint seeks to bring Ohio Minimum Fair Wage Act claims pursuant to Federal Rule of Civil Procedure 23 as a class action, which differs from the FLSA's collective action. Safelite urges that references to the Ohio Minimum Fair Wage Act in the proposed notice should not be included because they are misleading, confusing, and inappropriate. This

12

Court agrees. Thus, the notice shall not contain any reference to the Ohio Minimum Fair Wage Standards Act.

### 2. Discovery

Plaintiffs' proposed notice does not mention that opt-in plaintiffs may be required to participate in discovery. Safelite asserts that any notice to potential opt-in plaintiffs should include a statement that "opt-in plaintiffs may be required to participate in written discovery and that they may be required to appear for deposition and/or trial in the Southern District of Ohio." (ECF No. 14, at 10.) This Court agrees.

Inclusion of Safelite's suggested statement would allow potential plaintiffs to make a reasoned decision about the time they would need to invest in the suit should they decided to opt-in. Courts, including this one, have approved language fully describing possible discovery requirements of opt-in plaintiffs. *See Baden-Winterwood v. Life Time Fitness*, 2:06-CV-99, 2006 WL 2225825, at * 2 (S.D. Ohio Aug. 2, 2006) (approving proposed notice language that stated, "[w]hile this suit is proceeding, you may be required to respond to written questions, sit for depositions and or testify in court"); *Reab v. Elec. Arts, Inc.*, 214 F.R.D. 623, 630 (D.Colo. 2002); *Schwed v. Gen. Elec. Co.*, 159 F.R.D. 373, 379 (N.D. N.Y. 1995). Thus, Plaintiffs' proposed notice must include similar language.

### 3. Safelite's Costs

Plaintiffs' notice does not state that potential plaintiffs could be held liable for payment of Safelite's costs associated with the lawsuit if Safelite prevails. Safelite requests that the notice advise potential opt-in plaintiffs that they could be held liable for such costs. Plaintiffs, however, argue that any reference to defense costs would discourage plaintiffs from joining the

litigation and should not be included in the notice. Plaintiffs' argument is not well taken.

Being made aware of the possibility of being held liable for Safelite's costs of litigation is necessary information for potential plaintiffs to make an informed decision about whether to opt-in as a plaintiff. Certainly, issues of financial responsibility for the suit would play into that determination, and numerous courts, including this one, have required such information be included in FLSA collective action notices. *See, e.g., Baden-Winterwood*, 2006 WL 2225825, at *1; *Dietrich v. Liberty Square, L .L.C.*, 230 F.R.D. 574, 580 (N.D. Iowa 2005); *Ponce v. Tim's Time, Inc.*, No. 03 C 6123, 2004 WL 1921038, at *3 (N.D. Ill. July 8, 2004), *Gjuroviceh v. Emmanuel's Marketplace*, 282 F.Supp.2d 101, 107 (S.D. N.Y.2003). As such, the notice shall contain a statement that the opt-in plaintiffs could be liable for the payment of Safelite's costs if Safelite prevails.

### 4. Right to Choose Counsel

Plaintiffs' proposed notice does not refer to the potential plaintiffs' right to be represented by counsel of their own choosing. Safelite argues that Plaintiffs' notice implies that opt-in plaintiffs would be represented solely by Plaintiffs' counsel. Plaintiffs argue that a notice only needs to inform potential plaintiffs of their right to file a separate lawsuit. Plaintiffs' argument is not well taken.

The Court finds that a statement indicating that the potential plaintiffs have the right to choose their own counsel should appear in the notice. Informing potential plaintiffs of their right to chose their own counsel is an appropriate element in a notice. *See, e.g., Douglas v. GE Energy Reuter Stokes*, No. 1:07CV077, 2007 U.S. Dist. LEXIS 32449, at *17 (N.D. Ohio April 30, 2007); *Gjurovich v. Emmanueal's Marketplace, Inc.*, 282 F. Supp.2d 101, 107 (S.D. N.Y.

2003); *Heitman v. City of Chicago*, No. 04 C 3304, 2004 U.S. Dist. LEXIS 14669, at *9 (N.D. Ill. July 29, 2004); *Bailey v. Youth Villages, Inc.*, No. 07-1089, 2008 U.S. Dist. LEXIS 114364, at *10 (W.D. Tenn. July 30, 2008).  Thus, the notice shall contain a statement indicating that the opt-in plaintiffs are entitled to be represented by the named Plaintiffs' counsel or by counsel of his or her own choosing.

### 5. Safelite's Position

Safelite opposes Plaintiffs' proposed notice because it does not include any statement that Safelite denies Plaintiffs' allegations.  Safelite complains that it is unfair to prohibit it from describing its position in the litigation, including any particular defenses it believes it may have. Safelite also requests that it be permitted to state that it believes it has complied with the FLSA in good faith.  Safelite's arguments are well taken.

The Court concludes that Safelite's denial of any FLSA violation should be included in the notice. The Supreme Court has commented that, "trial courts must take care to avoid even the appearance of judicial endorsement of the merits of the action." *Hoffmann-LaRoche*, 493 U.S. at 174.  The purpose of the notice is to provide potential plaintiffs with a neutral discussion of the nature of the action.  *Monroe v. United Air Lines, Inc.*, 90 F.R.D. 638, 640 (D.C. Ill. 1981). Courts frequently approve and even require that the notice include a statement that the defendant denies the allegations and complied with the FLSA in good faith.  *See, e.g. Baden-Winterwood v. Life Time Fitness*, No. 2:06-CV-99, slip op. at 6 (S.D. Ohio August 8, 2006); *Adams v. Inter-Con Security Sytems, Inc.*, 242 F.R.D. 530, 541 (N.D. Cal. 2007); *Belcher v. Shoney's, Inc.*, 927 F. Supp. 249, 253 (M.D. Tenn. 1996); *Belt v. Emcare, Inc.*, 299 F. Supp.2d 664, 671 (E.D. Tenn.

2003). Thus, the notice must include language stating Safelite's denial of the allegations and its belief that it complied with the FLSA in good faith.

### 6. Opt-in Period

Plaintiffs' notice proposes a ninety day opt-in period and their motion requests a one hundred day opt-in period. Safelite suggests that a forty-five day opt-in period would be sufficient. This Court agrees.

A forty-five day opt-in period satisfies the need to prevent delay in this litigation while also allowing potential plaintiffs time to fully consider their options. This Court previously determined a forty-five day opt-in period to be more efficient than a proposed sixty day opt-in period. *See Baden-Winterwood*, 2006 WL 2225825, at *3 ("sixty (60) days is too long and would needlessly delay the litigation"). Thus, the notice should include that the potential plaintiffs shall have forty-five (45) days to return their consent form to opt-in to this action.

### 7. Conclusion to Court Supervised Notice

The Court **ORDERS** the parties to confer and to file the agreed upon revised proposed notice with this Court within ten (10) days of the date of this Opinion and Order. The Court will review the proposed notice, and if it finds it acceptable, will file it as part of the record in this action.

### IV. Conclusion

For the reasons stated, the Court **GRANTS in part and DENIES in part** Plaintiffs' Motion for Conditional Class Certification, Expedited Discovery, and Court-Supervised Notice to Potential Opt-In Plaintiffs. (ECF No. 7.)

**IT IS SO ORDERED**.

/s/ Gregory L. Frost
GREGORY L. FROST
UNITED STATES DISTRICT JUDGE