UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

RICHARD KRITZER, et al.,

       Plaintiffs,                              Case No. 2:10-cv-0729
                                                  JUDGE GREGORY L. FROST
      v.                                     Magistrate Judge Norah McCann King

SAFELITE SOLUTIONS, LLC, et al.,

       Defendants.

**OPINION AND ORDER**

This matter is before the Court on the parties' Joint Motion for Final Approval of Class Action Settlement. (ECF No. 112.) Subsumed into that Joint Motion are the Plaintiffs' Motion for Class Certification of Ohio Claims (ECF No. 93) and Plaintiffs' Counsels' Motion for an Award of Attorneys' Fees and Reimbursement of Costs (ECF No. 107). As set forth in detail below, the Court approves the parties' proposed settlement agreement.

**I.  Background**

Plaintiffs Patrick W. Heaps, Joshua Pursley, and Richard Ruppert commenced this action in August 2010 on behalf of themselves and all other similarly situated individuals, seeking compensation for unpaid wages and overtime pay. (Compl., ECF No. 2.) Plaintiffs named Safelite Solutions, LLC and Safelite Group, Inc. (collectively "Safelite" or "Defendants") as Defendants, claiming that Safelite willfully failed to compensate employees with wages and overtime pay in violation of the federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, and the Ohio Minimum Fair Wage Standards Act ("Ohio Wage Act"), Ohio Rev. Code §§

1

4111.01 *et seq.*  Plaintiffs brought the FLSA claims as a collective action under 29 U.S.C. § 216(b) on behalf of all current or former Customer Service Representatives ("CSRs") employed during the three years prior to the lawsuit's filing.  The gravamen of the claim was that Safelite required the CSRs to spend time booting up their computer systems before beginning their shift and shutting down their systems after their shift ended, without compensating them for that time.  This Court conditionally certified an opt-in class for a collective action under the FLSA. (Opinion and Order, ECF No. 26.)

Pursuant to this Court's conditional certification, notice was provided to more than 2,800 current or former employees.  In addition to CSRs, the notice expressly included current and former telephone Sales Representatives ("SRs").  More than 200 CSRs and SRs opted-in to the FLSA collective action.

On November 1, 2011, upon stipulation of the parties, named Plaintiffs Richard Kritzer, Joshua Pursley, Richard Ruppert, Sharon Ruppert, Jo McIntosh, and Tom Walsh filed an Amended Complaint.  (ECF No. 92.)[1]  The Amended Complaint realleged claims for unpaid wages and overtime under the FLSA and Ohio Wage Act, but explicitly added SRs as an additional category of employees who were subjected to Safelite's allegedly unlawful employment practices.  Plaintiffs later filed a formal motion for certification of a class action for the Ohio Wage Act claims.  (ECF No. 93.)

On February 10, 2012, the named Plaintiffs and Defendants jointly moved this Court for an order conditionally certifying a class for purposes of settlement and requesting that the Court

---

[1] Before the Amended Complaint was filed, the Magistrate Judge granted Plaintiffs' request to remove Mr. Heaps as a named Plaintiff.  (ECF No. 89.)

2

preliminarily approve the settlement agreement the parties had reached. (ECF No. 102.) The terms of the proposed settlement agreement included provisions dictating—

- Defendants will pay a total of $455,000, which will include payments to claimants, up to $235,000.00 in attorneys' fees and costs to class counsel, and the class action administrator's fee for services;

- each qualified claimant will be paid the amount owed to them, an amount based on an extra four minutes per day worked, if that employee worked 39.67 hours or more in a given week during the relevant period of time in question;

- Defendants will prepare the checks issued to the claimants and will pay the normal employer-paid payroll taxes separate and apart from the $455,000 settlement fund; and

- any unclaimed funds will be paid to the charity or charities agreed upon by the parties.

(ECF No. 105-1.)[2] The Settlement Agreement also detailed the process for notice to the class, including provisions regarding the procedures for opting out, objecting to the Settlement Agreement, and making a claim for settlement funds. This Court granted the Joint Motion for conditional approval.

---

[2]The parties submitted a "Corrected Settlement Agreement" (ECF No. 105-1) that clarified certain language concerning the amounts due to qualified claimants and provided for the Claims Administrator to issue settlement checks to claimants rather than Defendants. (Joint Notice of Corrected Settlement Agreement, ECF No. 105.) The Court's references to the parties' proposed settlement agreement in this Opinion and Order are to the Corrected Settlement Agreement.

During March 2012, the class action claims administrator designated by the parties distributed court-approved notice to 2,761 members of the proposed class. (Pohl Decl. ¶¶ 4-6, ECF No. 112-1.) The mailing to the class members included a "Notice of Proposed Settlement of Class Action Lawsuit and Fairness Hearing," a "Settlement Claim Form and Release," "Settlement Claim Form Instructions," and an "Opt-Out Statement." (*Id.* at ¶ 5 and Exhs. 1, 2, and 3.) As of May 11, 2012, the administrator had received 448 valid claim forms and 42 timely requests to opt out of the class. (*Id.* at ¶¶ 9-10.)

On May 21, 2012, this Court convened a Fairness Hearing on the proposed Settlement Agreement. There were no objections to the Settlement Agreement raised at the hearing or submitted in writing prior to the hearing.

## II. Discussion

The parties ask the Court for approval of a settlement agreement that encompasses class action claims and collective action claims under the Fair Labor Standards Act ("FLSA"). Insofar as the parties propose to settle claims of the opt-in FLSA plaintiffs, the proposed settlement agreement is subject to approval by the Court under 29 U.S.C. § 216(b). *See Dillworth v. Case Farms Processing, Inc.*, No. 5:08-cv-1694, 2010 WL 776933, at *2 (N.D. Ohio Mar. 8, 2010). The proposed class settlement is also subject to approval by the Court under Fed. R. Civ. P. 23.

### A. Class Certification Under Fed. R. Civ. P. 23

The parties' Joint Motion asks the Court to certify a "settlement class" pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3), a class consisting of "all Customer Sales Representatives and Telephone Sales Representatives employed by Defendants in Ohio and any Opt-in Plaintiffs in the FLSA collective action employed in Arizona, between August 13, 2007 and February 10,

2012." (Joint Mot. for Final Approval 1-2, ECF No. 112.) Before evaluating the appropriateness of the proposed class settlement, the Court must first determine whether class certification is appropriate in the first instance.

Fed. R. Civ. P. 23(a) allows one or more members of a class to sue as representatives on behalf of all if (1) the class is so numerous that joinder is impracticable (the "numerosity" requirement), (2) there are questions of law and fact common to the class (the "commonality" and "typicality" requirements), and (3) the representatives' claims will fairly and adequately protect the interests of the class (the "adequacy of representation" requirement). *See* Fed. R. Civ. P. 23(a). If each of these requirements is satisfied, the district court may certify a class action if the plaintiffs also satisfy one of the three provisions of Fed. R. Civ. P. 23(b).

As to the first factor, the Court finds that the class is sufficiently numerous. The numerosity was reflected in the notice to class members issued pursuant to this Court's conditional certification. The class consists of 2,761 members. This number is sufficiently large such that joinder of all class members is impracticable. *See Rotuna v. West Customer Mgmt. Group, LLC*, No. 4:09cv1608, 2010 WL 2490989, at *3 (N.D. Ohio June 15, 2010) (finding approximately 1,800 members to satisfy numerosity requirement in FLSA case).

As to the second factor, the Court also finds that there are common issues of law and fact that predominate in this action. The same legal question is at play with all members of the class: were the CSRs and SRs entitled to be compensated for the time spent booting up and shutting down their work computers? Resolution of this central legal question as to the class representative Plaintiffs would affect the class as a whole. *See Rotuna*, *supra* at *4. It also appears that common factual questions are at play, as the class members perform the same tasks

using the same equipment and Safelite's employee policies (if any) governing the issue of booting up and shutting down time would be the same for all class members. *See id.*

Typicality is also satisfied for purposes of the Rule 23(a) inquiry. The typicality requirement tends to merge with commonality, such that "a finding of commonality will ordinarily support a finding of typicality." *General Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 157 n.13, 102 S. Ct. 2364, 72 L. Ed. 2d 740 (1982). A class plaintiff's claim is typical of those of other class members if the claims arise from the same practice or course of conduct and are based on the same legal theory." *In re American Med. Sys.*, 75 F.3d 1069, 1082 (6th Cir. 1996). In this case, the CSRs and SRs performed similar (if not identical) call center duties for Safelite and were allegedly required to arrive at work early to spend (uncompensated) time booting up their computers in advance of the paid work day and of ending their paid work day before spending (uncompensated) time shutting down their computers. Under these allegations, there are enough common elements of fact and law with respect to the course of conduct at issue to satisfy Rule 23(a)'s typicality requirement. *See Rotuna* at *4 (citing *In re American Med. Sys.*). Resolution of the class representatives' claims would resolve the issue of whether booting up and shutting down their work computers were compensable parts of the representatives' work days, necessarily resolving those issues on behalf of the class. The fact that individualized review of the monetary recovery may have been necessary in a trial of this action does not foreclose typicality. *Id.*

As to adequacy of representation, the Court looks at two factors: "(1) The representative must have common interests with the unnamed members of the class, and (2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel."

*Senter v. GMC*, 532 F.2d 511, 525 (6th Cir. 1976). Adequate class representation is essential due to the preclusive nature of a class action judgment. *See Elkins v. American Showa, Inc.*, 219 F.R.D. 414, 419 (S.D. Ohio 2002).

Both prongs appear to be satisfied here, as the representative Plaintiffs share with the rest of the class the desire to obtain compensation for the uncompensated time at issue in this case. *See Rotuna* at *4. The Court is also aware that counsel of the Plaintiff class has considerable experience litigating wage and overtime class actions. Plaintiffs' counsel has also pursued vigorously the claims in this action, further demonstrating adequate representation of not only the class representatives but the class as a whole.

Having found the prerequisites of Fed. R. Civ. P. 23(a) met, the Court must determine whether the proposed class action fits under one of the categories specified in Rule 23(b). In its Motion for Class Certification (ECF No. 93), Plaintiffs invoked Rule 23(b)(3), which allows a class action to be maintained if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Informing the Court's determination on this issue are several factors, including (a) the class members' interests in individually pursuing separate actions, (b) the extent and nature of any litigation already begun by class members, © the desirability of concentrating the litigation in the particular forum, and (d) the likely difficulties in managing the class action. Fed. R. Civ. P. 23(b)(3)(A) – (D).

The predominance inquiry under Rule 23(b)(3) focuses on whether the proposed class is "sufficiently cohesive" to warrant class action treatment. *Amchem Prods., Inc. v. Windsor*, 521

U.S. 591, 623, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997).  "Where a finding of liability requires separate proof for each plaintiff, liability is not a predominate issue." *Elkins*, 219 F.R.D. at 419.  But if a common question is truly at the heart of the case, then the predominance requirement is satisfied.  *See Powers v. Hamilton Cty. Pub. Defender Comm'n*, 501 F.3d 592, 619 (6th Cir. 2007).  In this case, the only individualized questions present in this case are the specific number of hours worked by Safelite CSRs and SRs allegedly required to work off the clock.  The factual and legal issues concerning whether the booting up and shutting down of the computers were or should have been part of the plaintiffs' compensable work day are common questions that make up the crux of the case.  Accordingly, this Court finds the predominance requirement of Rule 23(b) satisfied.

       The Court also finds that the class action is the "superior" method of adjudicating the controversy here.  The wages at issue on the individual class member level (as borne out by the amount of claims submitted in response to the class action notice) are relatively small, undercutting the individual class members' interests in pursuing their own separate actions.  (Indeed, only 42 out of 2,761 class members chose to opt out of the proposed settlement agreement.)  Moreover, the class members occupied relatively low paying positions at Safelite: given the arguably limited resources of the class members, there is a strong interest in prosecuting the claims in one forum.  *Rotuna*, 2010 WL 2490989 at *4.  The Court is not aware of any other actions that have been brought by individual members of the putative class, nor does it find undue difficulties in managing the putative class.

### B. Settlement of FLSA Claims

In addition to settling Ohio Wage Act claims, the proposed settlement agreement would settle the FLSA collective action claims of the FLSA opt-in plaintiffs. The goal of the FLSA is to ensure that a covered employee receives a "fair day's pay for a fair day's work" and is "protected from the evil of overwork as well as underpay." *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 739, 101 S. Ct. 1437, 67 L. Ed. 2d 641 (1981). Toward that end, the FLSA provides that an employer who violates the Act's provisions regarding minimum wages or overtime "shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). Prevailing plaintiffs are also entitled to recover reasonable attorneys' fees and costs of the action. *Id.* The FLSA's provisions are mandatory and, except as otherwise provided by statute, are generally not subject to being waived, bargained, or modified by contract or by settlement. *Dillworth* at *5 (citing *Brooklyn Sav. Bank v. O'Neill*, 324 U.S. 697, 65 S. Ct. 895, 89 L. Ed. 1296 (1945)).

One of the exceptions allowing FLSA claims to be compromised is when a court reviews and approves a settlement agreement in a private action for back wages under 29 U.S.C. § 216(b). *Id. See also Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982). The Court's role in approving a settlement of an FLSA collective action "is comparable to that of a court in a settlement of a class action brought pursuant to Fed. R. Civ. P. 23." *Dillworth* at *5 (citing *Collins v. Sanderson Farms, Inc.*, 568 F. Supp. 2d 714, 719 (E.D. La. 2008)). In approving such a settlement, the Court must ensure that there is a bona fide dispute between the parties as to the employer's liability under the FLSA, lest the parties be allowed to

negotiate around the FLSA's requirements concerning wages and overtime. *Id.* at *5 (quoting *Collins*); *see also Rotuna* at *5. Where there is a bona fide dispute under the FLSA, a district court may be satisfied that "the parties are not, via settlement of the plaintiffs' claims, negotiating around the clear FLSA requirements of compensation for all hours worked, minimum wages, maximum hours, and overtime." *Collins* at 719.

      The Court finds that the parties' proposed settlement resolves a bona fide dispute under the FLSA. At the heart of the case is whether Plaintiffs were entitled to compensation for "off the clock" time spent booting up and logging off their work computers. A sharp controversy between the parties existed as to whether Safelite had a policy of starting the employees' work day before the booting-up process was completed. While Plaintiffs and other employees maintained that they were trained to arrive at work as many as 15 minutes *before* their scheduled shift in order to be "ready" and "booted-up" to take their first customer service call, Safelite supervisors, trainers, and other employees maintained that Safelite deemed the work shift to start when the employee *initiated* the booting-up process. The parties also had differing views on the issue of whether the alleged work time at issue was "de minimis" and therefore not compensable. (*See* Joint Mot. 7, ECF No. 112.) Given the sharp dispute between the parties about the underlying facts of the case, the Court is satisfied that the settlement agreement here is not an attempt to "negotiate around" the FLSA's mandatory requirements of compensating employees for all hours worked and for overtime.

      **C.**    **Fairness, Reasonableness, and Adequacy of Settlement**

      Having found that this case is properly certified as a class action for Ohio claims and that there exists a bona fide dispute under the FLSA that can be resolved by a settlement agreement,

the Court turns to the issue whether to approve the proposed settlement agreement entered into by the parties.  There is a strong federal policy encouraging settlement of class actions.  *See In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369, 371-72 (S.D. Ohio 2006).   The Court must, however, make sure a settlement is the product of arms-length negotiation and not the product of collusive bargaining.  *See Bronson v. Board of Educ.*, 604 F. Supp. 68, 73 (S.D. Ohio 1984).  So long as a settlement agreement reached through arms-length negotiation is fair, reasonable, and adequate, the Court may properly approve the agreement.  *In re Broadwing* at 381-82.

In determining whether a proposed class action settlement is fair, reasonable, and adequate, a district court is required to consider and balance several factors—

1. Plaintiffs' likelihood of ultimate success on the merits balanced against the amount and form of relief offered in settlement;
2. The complexity, expense and likely duration of the litigation;
3. The stage of the proceedings and the amount of discovery completed;
4. The judgment of experienced trial counsel;
5. The nature of the negotiations;
6. The objections, if any, raised by the class members; and
7. The public interest.

*In re Telectronics Pacing Sys.*, 137 F. Supp. 2d 985, 1009 (S.D. Ohio 2001).

### 1. Likelihood of Success

The most important factor to consider in approving a class settlement is the plaintiffs' probability of success on the merits, particularly when weighed against the recovery provided in the proposed settlement agreement.  *See In re General Tire & Rubber Co. Sec. Litig.*, 726 F.2d

1075, 1086 (6th Cir. 1984). The lower the likelihood of success on the merits, the more desirable a favorable settlement appears. *Id. See also In re Atlantic Fin. Mgmt. Sec. Litig.*, 718 F. Supp. 1012, 1021 (D. Mass. 1989).

In this case, the Plaintiffs' likelihood of success is far from certain. Were this case to move forward, Plaintiffs would likely be required to undertake a costly and lengthy discovery process in order to determine the specific hours, times, and dates that the class members worked. And even then, there is no guarantee that the legal issues would be resolved in Plaintiffs' favor, as Defendants have sharply contested the notion that Safelite policies require Plaintiffs to work off-the-clock minutes prior to the start or after the end of a work shift. In short, there are factual and legal complexities present in this case that cut against a clear determination of the Plaintiffs' likelihood of prevailing on the merits, such that a settlement at this juncture of the case is desirable. *See Rotuna* at \*6.

Balanced against the uncertain chances of success on the merits is the value of the settlement. The parties, with the aid of mediation and arms-length negotiations, have reached a lump sum settlement of an amount that (to date) exceeds the value of the class claims submitted for approval. This balancing of the Plaintiffs' likelihood of success with the settlement amount negotiated by the parties cuts in favor of the proposed settlement.

### 2. Complexity, Expense, and Likely Duration of Litigation

As alluded to above, the factual and legal complexities of the case are considerable. Given those complexities, the parties would be likely to undertake great expense in pursuing discovery, a process that has the potential of prolonging this litigation considerably. This factor therefore tips in favor of approving the proposed class settlement.

### 3. Stage of Proceedings and Amount of Discovery Completed

To ensure that the class plaintiffs have had access to the information needed to adequately assess their case and the desirability of the proposed settlement, it is necessary to consider the stage of the proceedings and the amount of discovery taken to date. *See Kogan v. AIMCO Fox Chase, L.P.*, 193 F.R.D. 496, 502 (E.D. Mich. 2000). The proposed settlement in this case came after approximately one year of discovery, during which the parties conducted several depositions and exchanged hundreds of documents. In light of the discovery that took place prior to settlement taking place, the Court deems it appropriate to "defer to the judgment of experienced trial counsel" with regard to the evaluation of the strength of the case and the desirability of settlement at this stage of the proceeding. *Id.* at 501. The Court therefore views this factor as favoring approval of the settlement agreement.

### 4. Judgment of Experienced Trial Counsel

Both Plaintiffs' counsel and Defendants' counsel have indicated to the Court their shared belief that the proposed settlement is fair, reasonable, and adequate. The Court gives weight to the belief of experienced counsel that a settlement is in the best interests of the class. *See In re Telectronics Pacing Sys.*, 137 F. Supp. 2d at 1013.

### 5. The Nature of the Negotiations

As noted previously, this Court must be convinced that the proposed settlement is non-collusive and the product of arms-length negotiations. *See id. See also In re Broadwing, Inc.*, 252 F.R.D. at 375. The parties have demonstrated this to be the case.

The proposed settlement agreement was negotiated only after the parties conducted some discovery and undertook substantial factual investigation of the Plaintiffs' claims. The parties

enlisted the aid of an experienced private mediator, who was apparently instrumental in assisting the parties to reach an agreement acceptable to both sides. The parties' Joint Motion further indicates that the negotiations were hard fought, in that each side "vigorously attempted to secure the most desirable conclusion for their respective clients." (Joint Mot. 9, ECF No. 112.) In view of the parties' submissions and their presentation at the Fairness Hearing, the Court is satisfied that the proposed settlement is the product of arms-length negotiation in which the interests of the class were properly represented.

### 6. Lack of Objections Raised by Class Members

In evaluating whether to approve a proposed class settlement, the Court is also required to take into account the objections, if any, raised by class members. In this case, no class member filed a timely objection and no class member appeared at the Fairness Hearing to object to this Court's approval of the proposed settlement.

### 7. Public Interest

Generally speaking, the public interest favors the settlement of class action litigation. *See Hainey v. Parrott*, 617 F. Supp. 2d 668, 679 (S.D. Ohio 2007). While this case is not of general public interest, the public interest favoring settlement certainly applies here, as the proposed settlement ends potentially long and protracted litigation. *See In re Broadwing*, 252 F.R.D. at 369. Accordingly, the Court concludes that this factor weighs in favor of approving the proposed settlement.

### 8. Equitable Distribution

In evaluating the fairness of a class settlement, a court should also ensure that the distribution of settlement proceeds is equitable. *Rotuna* at *6 (citing *Ortiz v. Fibreboard Corp.*,

527 U.S. 815, 855, 119 S. Ct. 2295, 144 L. Ed. 2d 715 (1999)).  Equity does not dictate that the proceeds must be shared on a pro-rata basis, so long as the ultimate distribution is fair, reasonable, and adequate.  *See id.* (citing *UAW v. GMC*, 497 F.3d 615, 628 (6th Cir. 2007)).

Each qualified claimant's share of the settlement agreement is calculated the same way: in rough summary, the proposed settlement agreement defines a claimant's share as the amount of time in excess of 40 hours worked in a work week (after addition of 20 minutes of work time) multiplied by 1.5 times the hourly rate of pay of the qualified claimant.  Based on the number of claimants who submitted claim forms pursuant to the notice issued to the class, the total amount of claims was $50,129 as of the date of this Court's fairness hearing.  In addition, the proposed settlement agreement provides for the six class representatives to recover $2,500.00 each (for a total of $15,000.00) as a "service payment" for their roles as class representatives.  Any amount left over from the settlement fund, after reimbursement of the class administrator's fee and the award of attorneys' fees (discussed below), is to be distributed to charities of the parties' choosing.

The Court finds the settlement distribution to be fair, reasonable, and adequate.  As to the "service payment" for the named class representatives, such awards are common in class action settlement and routinely approved for the simple reason "to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation."  *Rotuna* at *7 (quoting *Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 145 (E.D. Pa. 2000)) (internal quotations omitted).  And even though the total amount being paid to qualified claimants is relatively small when compared to the total amount of the settlement fund, the Court does not view that circumstance as having a negative impact upon the fairness, reasonableness,

15

and adequacy of the settlement as a whole.  The named class representatives and their counsel expended considerable effort to obtain, in settlement, a significant fund from which class members could make claims to compensation.  The fact that only 475 of the 2,719 class members (not including opt-outs) who received notice chose to timely submit a claim does not demonstrate inequity in the distribution of proceeds.

Having considered all of the relevant factors individually and collectively in connection with the parties' proposed settlement agreement, the Court concludes that the balance of factors favors approval of the agreement.  The balance of factors weighs in favor of a finding that the proposed settlement agreement is a fair and reasonable resolution of a bona fide dispute.

**D.	Attorneys' Fees for Class Counsel**

The proposed settlement agreement provides for a total award of attorneys' fees and costs to Plaintiffs' counsel in an amount up to $235,000.00, including reimbursement of $28,301.57 in out-of-pocket expenses that plaintiffs' counsel advanced on their clients' behalf.[3]  Provided that class counsel recovers the entire $235,000.00, the recovery would equal nearly 52 percent of the total recovery from Defendants.

An award of attorneys' fees and costs must be reasonable, meaning an award adequate to attract competent counsel but one that does not produce a windfall to attorneys.  *Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 2008) (quoting *Blum v. Stenson*, 465 U.S. 886, 897, 104 S. Ct. 1541, 79 L. Ed. 2d 891 (1984)).  In determining whether the amount of an award is reasonable, courts

---

[3] Of the total amount for attorneys' fees and costs, the proposed settlement agreement provides for Plaintiffs' counsel to be paid $200,000.00 within 10 days of the settlement agreement's effective date.  Any amount left unclaimed by qualified class claimants, up to $35,000, would then go to Plaintiffs' counsel for additional attorney-fee recovery.

consider (1) the value of the benefit rendered for the class, (2) society's stake in rewarding attorneys who produce such benefits, (3) whether the services were undertaken on a contingent fee basis, (4) the value of the services on an hourly basis, (5) the complexity of the litigation, and (6) the professional skill and standing of the attorneys involved. *See Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1196 (6th Cir. 1974).

There is no doubt that the result achieved for the class was exceptional in this case. Even if the maximum award for attorneys' fees and costs provided for under the proposed settlement agreement is achieved, there remains a substantial fund to compensate the class claimants. Class members will recover nearly all (if not all) of their unpaid wages based on the previously uncompensated time spent "booting up" their work computers. Further demonstrating the exceptional recovery in this case is the fact that claimants will not exhaust the settlement fund. Indeed, there are certain to be excess funds that the parties will distribute to charity under the terms of the proposed settlement agreement.

The second factor, society's stake in rewarding attorneys who produce such benefits, also favors the proposed attorney-fee award. The attorney-fee award proposed in this case, though substantial, must be viewed in conjunction with the substantial award garnered in favor of the class. Society has a stake in rewarding attorneys who achieve a result that the individual class members probably could not obtain on their own. *See In re Cardinal Health Inc. Sec. Litig.*, 528 F. Supp. 2d 752, 765-66 (S.D. Ohio 2007).

Also favoring the proposed fee award is the third factor: Plaintiffs' counsel undertook this engagement on a contingency fee basis. Having taken the case on a contingency fee basis, Plaintiffs' counsel undertook the risk of not being compensated, a factor that cuts significantly in

favor of awarding them a significant fee recovery here. *See id.* at 766 (noting that some courts consider "the risk of non-recovery" as "the most important factor in fee determination"). The risk of non-recovery was particularly significant here, in light of the factual uncertainties underlying the FLSA claims and the potential defenses that Safelite could have litigated through summary judgment or trial.

As for the value of the services rendered on an hourly basis, this factor strongly favors the fee requested by Plaintiffs' counsel. The amount of fees requested (a maximum of $235,000.00) is less than what the fee would be under a lodestar calculation.

The complexity of the litigation and the skill of the attorneys involved in this case are also factors that favor the attorney-fee award provided in the proposed settlement agreement. As noted previously, the case was vigorously contested on law and fact. And all counsel in this case have good reputations and considerable expertise in this area of law. Moreover, as documented by the time records submitted by Plaintiffs, it appears that Plaintiffs' counsel demonstrated efficiency in their handling of this matter, such that the total hours expended, though considerable, were not excessive.

For these reasons, the Court finds that the balancing of factors weighs in favor of the $235,000.00 maximum award of attorney's fees and costs to Plaintiffs' counsel.

### E. Cy Pres Award

The proposed settlement agreement and Joint Motion for Final Approval contemplate unclaimed funds being available from the settlement fund after full payment is distributed to class claimants, the named plaintiffs, class counsel, and the class administrator. (Joint Motion 12, ECF No. 112.) The proposed settlement agreement provides that these excess funds shall be

distributed to one or more charities of the parties' choosing.  At the Fairness Hearing, the parties had yet to reach agreement on the charity or charities to which the excess funds would be distributed.

Following the Fairness Hearing, Plaintiffs' counsel and Defendants' counsel each submitted a list of charities for which a Cy Pres distribution would be acceptable.   Pursuant to the parties' submissions, the Court orders that any unclaimed funds that remain under the terms of the settlement agreement shall be distributed in equal amounts to the following six organizations designated by the parties — the National Wildlife Federation®, The Sudan Clinic (http://www.sudanclinic.org), Refuge Point (http://www.refugepoint.org), Afrika Tikkun (http://afrikatikkun.org), the Mid-Ohio Food Bank, and Habitat for Humanity®.

### III.  Conclusion

The Court finds that the Settlement Agreement proposed by the parties (ECF No. 105-1) is a fair, adequate, and reasonable resolution to a bona fide dispute between the parties. Accordingly, the parties' Joint Motion for Final Approval of Class Action Settlement (ECF No. 112) is **GRANTED**.  The Settlement Agreement is hereby **APPROVED.**  Plaintiffs' Counsels' Motion for an Award of Attorneys' Fees and Reimbursement of Costs (ECF No. 107) is also **GRANTED.**  Pursuant to the Court's approval of the Settlement Agreement, the Court also hereby **ORDERS** as follows—

- The Settlement Class is hereby certified pursuant to Fed. R. Civ. P. 23(a) and (b)(3);
- Any unclaimed funds that remain under the terms of the Settlement Agreement shall be distributed in equal amounts to the following cy pres awardees designated

by the parties: National Wildlife Federation, The Sudan Clinic, Refuge Point, Afrika Tikkun, the Mid-Ohio Food Bank, and Habitat for Humanity;

- Plaintiffs' counsel shall be awarded up to $235,000.00 in attorney's fees, expenses, and costs, as provided in the Settlement Agreement;

- As provided in the Settlement Agreement, this action is **DISMISSED** on the merits and **WITH PREJUDICE**. All persons bound by the class action, including class representatives, are barred from prosecuting against any Released Parties, as defined in the Settlement Agreement, any of the Released Claims, as defined in the Settlement Agreement;

- In light of the Court's granting the Joint Motion for Final Approval of Class Action Settlement, Plaintiffs' Motion for Class Certification of Ohio Claims (ECF No. 93) is **TERMINATED AS MOOT**; and

- This Court shall retain jurisdiction of this matter for the purpose of enforcing the Settlement Agreement.

**IT IS SO ORDERED.**

               **/s/ Gregory L. Frost**
               **GREGORY L. FROST**
               **UNITED STATES DISTRICT JUDGE**